MARY E. JONES, APPELLEE, v. THE JOHNSON HARVESTER COMPANY, AND J. W. AGLEE, SHERIFF OF WAYNE COUNTY, NEBRASKA, APPELLANTS.

**Title.** In 1868, A, who resided in Chicago, sent from that place by express to B, at Omaha, $200 in money with which to enter a quarter section of land in Wayne county, Nebraska. B received the money, with it bought agricultural college scrip, located the land in his own name and filled up the blank assignment on the back of the duplicate certificate of location so as to assign said duplicate, and the land therein described, to A. *Held* that A was the equitable owner of the land and that B held but a dry legal title thereto. And *held further*, that the occupation and cultivation of said land from 1869 to 1875 by A, and after that time by the grantee of A by her tenant, was sufficient notice of such equitable title to an execution creditor of B.

APPEAL from Wayne county. The facts of the case are sufficiently stated in the opinion.

*Uriah Bruner and James Britton*, for appellant.

The mere fact that George J. Jones forwarded by express money to his father is no evidence that his father received the same. Nor can the contents of a letter of instructions accompanying said money, to show what was to be done with said money, be shown, unless it is shown that the same reached its destination and has been lost. 1 Greenleaf Ev., 88.

Nor can the contents of a certificate of location and the assignment thereof be proved unless the original be lost or cannot be obtained after proper effort has been made.

The deed from George J. Jones to Midgley for the purpose of having the same deeded to Mr. Jones's wife, and when done as disclosed by the evidence of Mr. Jones, was deeded to the wife to put it out of the reach of his creditors in case pecuniary misfortune should

overtake him, will be taken to be and is a direct conveyance from husband to wife, and as such is absolutely null and void at law. *Aultman, Taylor & Co. v. Obermeyer*, 6 Neb., 260. And the plaintiff tracing her alleged title and interest to the said premises altogether through this conveyance from her husband, it follows that she can have no standing as plaintiff in this action. George J. Jones can have no legal or equitable title to the said lands, by reason of the alleged assignment of the certificate of location. Neither the contents of said certificate nor the assignment thereof has been shown by competent testimony. Evidence of the highest kind is required to show the transfer of real estate. Parol proof of the contents of a lost deed must be so clear and positive as to leave no reasonable doubt of substance of the parts material to its effect. *Bennett v. Walker*, 23 Ill., 97. Proof of the contents of a lost paper should be the best the party has in his power to produce. *Renner v. Bank of Columbia*, 9 Wheat., 581.

This certificate of location has been traced to the land office at Dakota city and it is in proof that that is the proper place for it. It was therefore necessary to issue a subpœna *duces tecum* to the register of the land office to produce the same or give a certified copy thereof. 1 Best on Ev., 216. 1 Greenleaf Ev., 558. Gen. S., 593, Sec. 409. And unless the said officer should certify that he has made diligent and ineffectual search therefor in his office, no secondary evidence can be offered of the contents thereof. Gen. St., 593, Sec. 410.

The doctrine of resulting trusts from payment of purchase money is acted upon only with great caution, and the circumstances from which such trust is to be raised must be clearly proved. *Farringer v. Ramsay*, 4 Maryland Ch., 33. And the evidence must not only be distinct and credible, but it must preponderate. If not, the presumption is in favor of the party who

has the deed. ' *Johnson v. Quarles*, 46 Mo., 423. *Nixon's Appeal*, 13. P. F. Smith, 279. *Baker v. Vining*, 30 Maine, 121.

*George M. O'Brien* and *Edmund M. Bartlett*, attorneys for appellee.

1. Fraud must be established by *clear* and *substantial* evidence. It is not to be inferred, but must be proved, and will not be allowed to be made out from mere conjecture, or loose inference from ambiguous and inconclusive circumstances, which are as consistent with honesty as with falsehood. *Sullivan v. Warren*, 43 How. Pr. R., 188.

Again, fraud is not presumed, but must be distinctly and clearly made out, and cannot be inferred merely from equivocal circumstances, nor on slight evidence; nor is it to be considered as a single fact, but a conclusion drawn from circumstances. And in matters of conveyances these are not void for fraud—because their effect is to hinder, delay, and obstruct creditors—but it must be made with that intent to avoid it as fraudulent. Nor can the actual secret intent of a grantor, however bad, affect a bona fide purchaser without notice. Wells on Questions of Law and Fact, page 237, sec. 278. *Hollister v. Loud*, 2 Mich., 312, and cases cited.

2. It seems idle to argue the question of fraud, because there is no fraudulent circumstance or transaction proved, and every act is consistent with honesty and fair dealing.

3. The question of fraudulent intent is one of fact and not of law; and no conveyance or charge shall be adjudged fraudulent as against creditors or purchasers solely on the ground that it was not founded on a valuable consideration. General Statutes of Nebraska, page 395, sec. 20.

COBB. J.

The pleadings and evidence in this case show with sufficient clearness that on the 24th day of October, 1868, George J. Jones, who was then a resident in Chicago, Illinois, sent by express to his father, William H. Jones, at Omaha, Nebraska, the sum of two hundred dollars in money, for the purpose of buying a quarter section of government land in the northern part of this state, where lands were then open to entry. That said money was received by said William H. Jones, who soon thereafter with said money bought agricultural college scrip, and located it in his own name on a quarter section of land in Wayne county, at the United States land office at Dakota City. That he received therefor a duplicate receipt or certificate of location in the usual form. That he thereupon filled up the blank assignment on the back of said certificate, with an assignment of the same and the land therein described to the said George J. Jones, signed and acknowledged the same, and returned it to the said George J. Jones, at Chicago, by express. That in consequence of this assigned certificate or duplicate not having been returned or sent to the general land office, the patent for said land issued in the name of William H. Jones. That the same was offered to the said George J. Jones, who refused to receive it for the reason that the same did not run in his name; but before discovering the said error he had delivered up to the officers at the said land office the said assigned certificate or duplicate, who retained the same. That afterwards, and sometime in the year 1875, the said George J. Jones received a patent for the said land running to himself, under circumstances which induced him to believe that it was a corrected patent issued to him by the proper authorities, pursu-

ant to the said assignment of the said certificate or duplicate. That he thereupon caused the same to be recorded in the proper county (Wayne), and on or about the same time conveyed the said land to one Charles Midgley, who at the same time conveyed the said land to Mary E. Jones, both of which deeds were duly recorded in said county of Wayne. That said George J. Jones commenced improving said land in April or May, 1869, and continued to cultivate the same, and pay the taxes thereon until the year 1875, since which time it has been improved and occupied by the said Mary E. Jones, either personally or by tenants, and she has paid the taxes thereon.

It further appears that on the 9th day of November, 1875, the Johnson Harvester Company recovered a judgment in the district court of Wayne county against the said William H. Jones for $117.44 and $49 costs; and again on the 12th day of September, 1876, the Johnson Harvester Company recovered another judgment against the said William H. Jones in the county court of Cuming county for $134.80 and $39.75 costs of suit, and duly filed a transcript and docketed the same in said Wayne county. That upon said judgments two executions were issued and placed in the hands of J. W. Aglee, sheriff of Wayne county, who levied upon the said quarter section of land as the property of said William H. Jones, and advertised the same for sale on the 8th day of September, 1877.

Whereupon the said Mary E. Jones commenced her suit in equity against the said William H. Jones, J. W. Aglee, and the Johnson Harvester Company, and obtained a temporary injunction restraining the sale of the said lands, etc.

Upon the trial of said cause the court rendered a final decree that the said William H. Jones convey said land to the plaintiff, or in default of such convey-

ance, the said decree stand as a conveyance thereof, fully discharged of all liens by or on account of said judgments, and that the said injunction be made perpetual, etc.

From said decree the said Johnson Harvester Company and J. W. Aglee appealed to this court.

William H. Jones, in entering the land, acted merely as the messenger of George J. Jones, and he evidently intended that the patent should issue to the latter, which it would have done had not the parties through ignorance of such matters failed to forward the assigned certificate to the general land office. The assigned certificate, though not recorded, was sufficient to convey title—the naked and dry legal title of William H. Jones—to George J. Jones, the equitable owner. All that its recording could have supplied would have been constructive notice to the Johnson Harvester Company. The actual occupancy and cultivation of said lands by the said George J. Jones from 1869 to 1875, and by Mary E. Jones by her tenants after that time, was sufficient constructive notice of the unrecorded conveyance from William H. Jones.

There is no conflicting testimony, and we think the decree clearly right, and it must be affirmed.

DECREE AFFIRMED.