Smith v. Myers.

---

WILLIAM SMITH, APPELLEE, v. FANNIE B. MYERS, APPELLANT, ET AL.

FILED NOVEMBER 3, 1898. No. 8348.

1. **Conflicting Evidence: REVIEW.** A finding of fact on conflicting evidence will not be disturbed on appeal.

2. **Vendor and Vendee: FALSE REPRESENTATIONS: EVIDENCE.** Evidence *held* sufficient to establish that plaintiff was induced to make an exchange of lands by false representations.

3. ———: RIGHTS OF OCCUPANT; NOTICE. Where a grantor remains

in possession of real estate after the execution of the deed therefor, one purchasing is charged with notice of the right, title, or interest of such occupant in the property.

APPEAL from the district court of Lancaster county. Heard below before HOLMES, J.  *Affirmed.*

*J. N. Rickards* and *Daniel F. Osgood,* for appellant.

*Thomas Ryan, contra.*

NORVAL, J.

This suit was instituted in the court below by William Smith to cancel and annul a deed executed and delivered by plaintiff and wife to the defendant G. M. Dement to lot 4, block 13, in Newman's subdivision, University Place, in Lancaster county, on the ground that the conveyance was obtained by fraudulent representations. From a decree setting aside the deed and canceling the record thereof the defendant Fanny B. Myers has prosecuted an appeal.

It is insisted with apparent candor that there is not a particle of testimony to support the finding of the lower court as against Mrs. Myers. Her co-defendants have not appealed, which is a confession on their part of the justness of the decree, and a perusal of the evidence adduced on the hearing leads our minds to the same conclusion. The record discloses that the defendants reside at Crab Orchard, this state, and plaintiff, upon the tract above described.  Prior to May 27, 1895, there had been some negotiations between plaintiff and the agent of Dement for the exchange of lands.  On that date Dement and N. C. Myers visited plaintiff at his home at University Place, and while there a trade was effected for the exchange of plaintiff's property for certain real estate belonging to Dement situated in the state of Missouri which plaintiff had never seen.  In the deed executed by plaintiff and wife the name of no grantee was inserted. Subsequently the name of the defendant Fannie B. My-

ers, the wife of N. C. Myers, was inserted as grantee, and who now claims to be an innocent purchaser of the property. Plaintiff has hitherto remained in possession of said lot 4. The proofs tend to establish that on the day the trade was made, and prior to the consummation thereof, Dement, in the presence of N. C. Myers, gave plaintiff a written memorandum or statement of the condition of the Missouri land proposed to be exchanged, in the language following: "N. W. ¼ sec. 8, T. 32, R. 1. This 160 acres is nearly all smooth, about 72 acres in cultivation—the rest in pasture. A small house and barn, quite a good-sized apple orchard, and seedling peach trees, a lot of them, and are all full. This land is 2 miles north and ½ mile west from Centerville, and if times were not so close we would consider this very cheap at $17.50 per acre and believe you would have no trouble in selling it at $12.50 to $15 now. About 15 acres good timber and some small timber." The evidence also tends to show that at the time of the delivery of said memorandum Dement also orally made to plaintiff substantially the same representations as therein contained, and, in addition thereto, that the land was good for farming purposes, located six miles from the railroad station, and occupied by a tenant, and that there was on the premises a three-roomed house and a good barn. Some time after the trade was completed plaintiff visited the land obtained from Dement, and plaintiff describes its condition in his testimony as follows:

Q. What, if anything, did you do afterward with reference to examining the Missouri land?

A. I waited a few weeks, and thought it would be cold weather to be moving my family in the cold, and thought I would go down and see if I could get the parties off so I could take possession. When I got down there I was surprised. You would have to hang a sheep up by the tail to get the grass off that. I could find there nothing.

Q. How about the soil?

A. There was no soil at all—just a mass of rocks.

Q. Who went with you, if any one, to look at the land?

A. Mr. Cross.

Q. Did you go over the entire tract?

A. Yes, we went over the tract.

Q. Was there any orchard on the land?

A. Nothing whatever.

Q. Had you ever been up on the land?

A. Never.

Q. Was there then, or had there been, any building on it?

A. There was some appearance as if there had been, but there was nothing like a building. There was no roof on it.

Q. Were there any fruit trees?

A. No fruit trees.

Q. Orchard?

A. Nothing whatever.

Q. Was the land fit for cultivation? Could it be cultivated?

A. No, sir; you could not cultivate any of it.

Q. How did you find it with reference to the seventy-two acres reported to be in cultivation?

A. Well, there was not anything.

The foregoing excerpt from the testimony of plaintiff is corroborated by the depositions of E. H. Sutterfield and S. F. Cross, two disinterested persons who reside in Reynolds county, Missouri, where the land is located. It is further disclosed from said depositions that the land is situate twenty-one miles from the nearest railroad station. Although both Dement and N. C. Myers deny that they made any representations as to the quality and condition of the Reynolds county land, there was ample evidence before the trial court to justify a finding not only that the representations regarding the land imputed to them were made as alleged, but that said representations, in almost every essential particular, were false and untrue. In this case we can but apply the familiar rule that a finding based on conflicting evidence will not be

disturbed on appeal. If the evidence of the plaintiff and his witnesses are worthy of belief, Dement swindled plaintiff out of his property.

It is argued in the briefs that there is no averment in the petition, nor is there any evidence to show that plaintiff relied upon the representations and statements of Dement. This assertion is wholly without foundation. In the petition it is alleged "that plaintiff at that time stated to said defendants that he knew nothing of said land in Missouri, had never been in that part of said state, and that he must rely wholly on the statements of these defendants, and that in reliance thereon he would make the said trade. And plaintiff says that in reliance thereon, and with no knowledge whatever as to the said land except as represented to him by the said defendants, he, with his said wife, Elizabeth Smith, did, on or about the said 28th day of May, 1895, make a deed to said lot 4, block 13," etc. This is a sufficient pleading that the plaintiff was induced to make the exchange by the representations of Dement, and the averment is supported by the evidence of plaintiff himself.

It is insisted that there is no evidence to sustain the finding of the trial court as against the defendant Fanny B. Myers. It is true she made no representations or statements to the plaintiff whatever, but she is chargeable with notice of the fraudulent transaction, since she was not an innocent purchaser of the land without notice. This is so for two reasons: She claims title solely under a deed from Smith to her, the instrument having been executed and delivered to Dement with the name of no person inserted therein as grantee, and Mrs. Myers' name was subsequently written therein as grantee without the knowledge or authority of the plaintiff. This alone was sufficient to put Mrs. Myers upon inquiry. Again, plaintiff has at all times been in possession of said lot 4, which was notice of the rights plaintiff had in the property. (*Uhl v. May*, 5 Neb. 157; *Jones v. Johnson Harvester Co.*, 8 Neb. 446; *McHugh v. Smiley*, 17 Neb. 626; *Conlee v.*

*McDowell,* 15 Neb. 184; *Pleasants v. Blodgett,* 32 Neb. 427; *Lipp v. South Omaha Land Syndicate,* 24 Neb. 692; *Hansen v. Berthelsen,* 19 Neb. 433.) It is suggested that the rule stated cannot be invoked against Mrs. Myers, since plaintiff accepted a lease from Dement for the University Place property and occupied the same as the latter's tenant. The lease was part of the transaction resulting in exchange of the property and was made at the same time. On the same day the lease was assigned to Mrs. Myers her husband represented her in that transaction as well as in the transfer of the property to her, and the evidence tends to show that Mr. Myers was present when the fraudulent representations were made by Dement to Smith. Notice to an agent is notice to the principal. The decree annulling and setting aside the deed is supported by the evidence.

Plaintiff complains because the trial court did not award him as damages a sum equal to the expenditures incurred by him by reason of the fraudulent representations of the defendant. We think the decree was right. Plaintiff sought and obtained a rescission of the contract of sale on the ground of fraud, and he was not also entitled to damages sustained by reason of the fraud. Plaintiff had a right to rescind the trade or affirm the contract, and his damages resulting from the transaction, but not both. We are aware of no case where one who has rescinded a contract on the ground of fraud has been allowed damages. The decree is

AFFIRMED.