HARRY F. MINGUS ET AL., APPELLEES, v. IDA BELL ET AL., APPELLANTS.

29 N. W. 2d 332

Filed October 17, 1947.   No. 32234.

*W. A. Stewart, Jr.,* for appellants.

*John M. Neff,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and THOMSEN, District Judge.

SIMMONS, C. J.

This is an action to quiet title to accretion land. Both parties seek a decree. The trial court entered a decree quieting title in the plaintiffs. Defendants appeal. We affirm the judgment of the trial court.

The land involved is four acres of timber and pasture land, accretion to Lot 1, Section 29, Township 9 North,

(735)

Range 21, West of the 6th P. M., Dawson County, situated on the Platte River, a non-navigable stream. Both parties claim by mesne conveyances from a common grantor, one Mary H. Stratton. Four deeds are involved.

July 11, 1941, the Strattons (wife and husband) conveyed the accretion land involved by quitclaim to the Kirkpatricks (husband and wife). April 13, 1942, the Kirkpatricks deeded the accretion land by quitclaim to the defendant Ida Bell. These two deeds were filed for record May 22, 1944.

November 13, 1941, the Strattons conveyed Lot 1 by warranty deed to Ray L. Scott. This deed was filed for record January 14, 1942. November 20, 1943, Scott and his wife deeded Lot 1 to the plaintiffs Harry F. and Mildred F. Mingus. This deed was filed for record November 23, 1943.

Plaintiffs' claim, therefore, is by virtue of a deed subsequent in time but recorded prior to the deed through which defendants claim.

Both parties accept the rule that "An owner of land on the shore of an unnavigable river, in the absence of restrictions in his grant, owns to the thread of the stream, and his riparian rights extend to existing and subsequently formed islands." Haney v. Hewitt, 105 Neb. 746, 181 N. W. 861. In re Central Nebraska Public Power and Irrigation District, 138 Neb. 742, 295 N. W. 386; Hardt v. Orr, 142 Neb. 460, 6 N. W. 2d 589; State v. Ecklund, 147 Neb. 508, 23 N. W. 2d 782.

Section 76-238, R. S. 1943, provides: "All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mort-

gages or other instruments shall be first recorded; *Provided,* that such deeds, mortgages and other instruments shall be valid between the parties."

The question then is this: Are the plaintiffs entitled to the protection of the statute?

Defendants claim that they fenced the property in 1942 and placed and kept cattle thereon, and that plaintiffs had notice of their claim by virtue of that possession at the time of plaintiffs' purchase.

Subject to an exception not here involved, the rule is that a purchaser, having notice of a previous outstanding title in land, who purchases from one without notice, will be protected in his title by the want of notice in his vendor. Garland v. Wells, 15 Neb. 298, 18 N. W. 132; Snowden v. Tyler, 21 Neb. 199, 31 N. W. 661; Ford v. Axelson, 74 Neb. 92, 103 N. W. 1039; Clements v. Doak, 140 Neb. 265, 299 N. W. 505; Annotation, 63 A. L. R. 1362; 66 C. J., Vendor and Purchaser, § 1045, p. 1188; 55 Am. Jur., Vendor and Purchaser, § 760, p. 1119.

The first inquiry then is: Was Scott a purchaser without notice?

Scott, a witness for the plaintiffs, testified that he was acquainted with this land before he purchased; that there was some fence upon it; that he was not advised of any prior deed to the accretion land when he pur-chased; that he had no knowledge that Kirkpatrick or anyone else owned the land; that he never saw Mr. Kirkpatrick there; and that he received a deed and an abstract and he supposed the accretion land went with the other land.

Mrs. Stratton, Scott's grantor, testified as a witness for the defendants. She testified as to the execution and delivery of the deed by herself and her husband to Scott on November 13, 1941, and then was asked if there had been any talk with Scott about the accretion land. She answered, "* * * I dont (sic) know whether it was that day or not, but I told him about it * * *." She was asked what she told him and replied, "He came

down there and he asked me what I did to this place, and I told him that I had sold it; I had never used it." She also stated she told him she had sold to the Kirkpatricks.

Defendants rely upon the above testimony as proof of notice to Scott. The testimony obviously is indefinite as to when this conversation occurred. It is not nailed down to the date of the execution and delivery of the deed. It was when Scott "came down" and asked about it. Clearly it was at a time after Scott had notice from someone else—a notice which the record shows he subsequently received from the defendants.

The conclusion that the conversation about which Mrs. Stratton testified did not occur at the time of the execution and delivery of the deed to Scott is sustained by other testimony of hers, which is as follows: Q. "And when you were selling him Lot One, you hadnt (sic) sold him any accretion land?" A. "I didnt (sic) say that." Q. "What did you say?" A. "We just deeded it over, *we didnt* (sic) *say*." (Emphasis supplied.) Q. "That you had previously deeded the accretion land?" A. "Previously deed that way before I deeded that to him." She further testified that she did not tell the party who made the deed anything in regard to the accretion land, and "when I made that deed I left."

We conclude then that Scott was a purchaser without notice and that the want of notice to Scott protects the plaintiffs in their title.

This conclusion makes it unnecessary to determine whether or not the plaintiffs had notice of defendants' deed and claim. Likewise it is unnecessary to determine whether or not defendants lost their rights by a claimed surrender of possession to plaintiffs.

The judgment of the district court is affirmed.

AFFIRMED.