CARL H. HOW AND WILLA J. HOW, HUSBAND AND WIFE, APPELLANTS, V. ROBERT R. BAKER ET AL., APPELLEES.
388 N.W.2d 462

Filed June 13, 1986.   No. 84-763.

Paul J. LaPuzza of Young & LaPuzza, for appellants.

E. Michael Slattery of Case, Reinsch & Slattery, P.C., for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Carl H. and Willa J. How, husband and wife, filed an amended petition on March 14, 1984, naming as defendants seven individuals whom plaintiffs allege "purport to be the duly

elected and qualified members of the Board of Directors of Beaver Lake Association, a Nebraska corporation." Plaintiffs allege that they were owners of certain real property located in Beaver Lake Subdivision, Cass County, Nebraska.

Plaintiffs own 13 lots in Beaver Lake Subdivision. These lots were conveyed to plaintiffs between December 10, 1970, and August 20, 1982. Beaver Lake Association (hereinafter Association) is a nonprofit corporation organized under the laws of the State of Nebraska. It is an association of landowners in Beaver Lake Subdivision, formed for purposes of generally providing for the health, recreation, safety, benefit, and other interests of its members, and was established to own and operate the water and sewer systems and other common area facilities at the Beaver Lake Subdivision for the benefit of members of the Association. The maintenance of streets, utilities, lake, clubhouse, and common areas is financed by the assessments charged to the Association's members.

In their first cause of action, plaintiffs alleged that the defendants, acting for the Association, "intend to create a set of restrictive covenants and restrictions intended to regulate and restrict all of the real estate within Beaver Lake Subdivision . . . ." In their first cause of action, plaintiffs sought a temporary restraining order and temporary and permanent injunctions restraining and enjoining defendants from recording any covenants or restrictions against plaintiffs' lots. In their second cause of action, plaintiffs alleged that defendants, for the Association, claimed "the right to create and/or modify restrictive covenants and restrictions upon the real estate located within Beaver Lake Subdivision . . . the right to levy and collect special assessments upon said real estate and the right to compel manditory [sic] membership in [the] Association . . . ." Plaintiffs sought a declaratory judgment to determine the parties' rights. Defendants answered on May 11, 1984, denying all substantive allegations of both causes of action.

The matter proceeded to trial on the stipulation of the parties and various documentary exhibits received in evidence without objection. Plaintiffs timely appeal to this court. By order entered August 16, 1984, the trial court dissolved the temporary restraining order, denied injunctive relief, and found that there

were existing covenants and restrictions which could be amended.

Plaintiffs assign three errors: That the trial court erred (1) in holding that the purported covenants and restrictions encumber and run with their land, (2) in holding that defendants have the right to amend the covenants and restrictions, and (3) in holding that defendants may amend the covenants and restrictions to require mandatory membership in the Association, to charge multiple lot dues, and to collect special assessments. We affirm.

Plaintiffs sought equitable relief below. We review matters in equity de novo on the record and reach an independent conclusion without reference to the trial court's findings, subject to the rule that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and accepted one version of the facts rather than the opposite. *Flansburgh v. Coffey*, 220 Neb. 381, 370 N.W.2d 127 (1985). We agree with the following findings as determined by the trial court.

Beaver Lake Corporation (hereinafter Corporation), a Nebraska corporation, was the developer of Beaver Lake Subdivision, a residential and recreational area in Cass County, Nebraska. The Corporation platted the development into 2,000 lots, constructed a dam and lake, built roads, installed a water and sewer system, constructed a clubhouse, and arranged for other services to be provided by private entities. The Corporation engaged in the sale of lots until it became insolvent. In lieu of foreclosure the Corporation conveyed to the U.S. National Bank of Omaha, its mortgagee, all interest in the subdivision, including all unsold lots, all roads, all common areas, all water and sewer utilities, the school site, and the cemetery site, by warranty deed dated September 14, 1976. The Corporation later executed a "Corporation Quitclaim Deed" to the bank on February 23, 1977, conveying all mineral rights. By a special warranty deed dated April 11, 1977, the bank conveyed its rights, title, and interest to the Association.

Plats of the subdivision were prepared by the Corporation

and filed and approved by the Cass County zoning commission on November 20, 1970. Covenants and restrictions (hereinafter covenants) were adopted by the Corporation on October 23, 1970. In these covenants the Corporation set out that the "seller" who filed the covenants was to be "construed to mean Beaver Lake Corporation, its successors and assigns and to include Beaver Lake Association which is a corporation to be formed by the . . . Corporation or with its consent . . . ." The covenants were filed in the county clerk's office of Cass County on November 6, 1970. The same covenants, although in different form, were later filed with the register of deeds of Cass County on October 12, 1973.

Each of the 13 lots purchased by plaintiffs was conveyed by the Corporation to the plaintiffs or their immediate or remote grantors prior to October 12, 1973. The first lot purchased by plaintiffs was conveyed directly to plaintiffs by the Corporation on December 10, 1970. That warranty deed contains the following language:

All of Lot No. #83 in Beaver Lake Sub-division, as surveyed, platted and recorded in the Office of the Register of Deeds of Cass County, Nebraska, subject, however, to all covenants, restrictions and easements of record, including those certain covenants, restrictions and utility easements recorded in Book D at Pages 195 and 196 in the records of clerks [sic] office and subject further to all oil, gas and mineral rights which are reserved to the grantor and excluded from this conveyance.

In this deed the phrase "records of clerks office" was printed as "records of said office" and the word "said" lined through by a pen stroke and the word "clerks" written in by pen.

Of the remaining 12 deeds to plaintiffs, only 5 deeds were introduced into evidence. Four of these deeds conveying lots to plaintiffs stated that the property was "free from encumbrance except easements and restrictions of record." The other, executed in December 1975, from an interim owner, merely stated the conveyed property was "free from encumbrance." Plaintiffs make no issue as to this difference.

On January 30, 1984, a public notice was published by the president of the board of directors of the Association

containing proposed amendments to the covenants. The parties do not question the procedure used to amend or revoke the covenants. Plaintiffs do not admit that the covenants proposed to be amended exist in regard to their property. Plaintiffs allege that defendants intend to create covenants which will encumber their property in the future. Plaintiffs also allege that a declaration of rights is needed because defendants claim the right to "create and/or modify" the covenants.

In their first assignment of error, plaintiffs assert that the lower court erred in holding that the covenants and restrictions run with the land. Plaintiffs contend that the failure to file the covenants in the office of the register of deeds of Cass County makes them nonexistent. We do not agree. The controlling fact concerns the issue of notice.

In *Grand Island Hotel Corp. v. Second Island Development Co.*, 191 Neb. 98, 214 N.W.2d 253 (1974), we held that the failure to record a lease did not affect its validity against a subsequent purchaser with notice. In that case we considered the effect of Neb. Rev. Stat. § 76-238 (Reissue 1981), which provides:

> All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice; and all such deeds, mortgages and other instruments shall be adjudged void as to all such creditors and subsequent purchasers without notice whose deeds, mortgages or other instruments shall be first recorded; *Provided*, that such deeds, mortgages and other instruments shall be valid between the parties.

Plaintiffs correctly read this section to require filing in the office of the register of deeds. However, it also provides that a filing is ineffective, when the statute is not followed, only as to those *without notice.* We interpret this to mean actual or constructive notice.

Plaintiffs are not correct in their assertion that the failure to file with the register of deeds makes the covenants ineffective as

to plaintiffs whether they did, in fact, have notice or not. The determination of plaintiffs' first assignment of error depends upon whether plaintiffs had constructive or actual notice of the covenants.

In *Mader v. Kallos*, 219 Neb. 579, 581, 365 N.W.2d 408, 410 (1985), we stated:

> A good faith purchaser of land is one who purchases for valuable consideration without notice of any suspicious circumstances which would put a prudent man on inquiry. The burden of proof is upon a litigant who alleges that he is a good faith purchaser to prove that he purchased the property for value and without notice. *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 74 N.W.2d 546 (1956).

The evidence in this case shows that the first deed to plaintiffs conveying Lot No. 83 on December 10, 1970, showed with specificity as to location of filing that covenants encumbered the property. That deed makes specific reference to the plat filed in the office of the register of deeds in Cass County and to covenants filed in the "clerks" office in Book D at pages 195 and 196. The plats which were filed in the register of deeds' office make specific references to covenants located in the "Miscellaneous Records of Cass County, Nebraska." The trial court determined that plaintiffs were not only residents of Beaver Lake but realtors. These facts, at the least, show circumstances which would put a prudent person on notice. A review of this evidence establishes that plaintiffs had actual notice of the existence of the covenants.

Plaintiffs contend that the issue of actual notice is irrelevant because there is no evidence to show knowledge of the covenants and restrictions on behalf of their many grantors. In support, plaintiffs cite *Mingus v. Bell*, 148 Neb. 735, 29 N.W.2d 332 (1947), which held that a grantee with notice would be protected by a grantor without notice. *Mingus* is not applicable to this case. Plaintiffs have failed to sustain their burden of proof to show that their grantors were without notice. The record shows that plaintiffs had actual notice of the covenants on December 10, 1970. There is nothing in this record to show that actual notice was erased from their minds in the succeeding

3 years. *Mingus, supra*, places the burden of proof on the party asserting a lack of knowledge. We hold that plaintiffs had actual notice from the deed conveying Lot No. 83 on December 10, 1970. We hold that this actual notice is effective as to all 13 lots. The covenants were filed with the register of deeds on October 12, 1973. There is no evidence that other grantors to plaintiffs were conveyed the property without constructive or actual notice. We note that the deed of December 10, 1970, to plaintiffs from the Corporation was a printed form with specific added interlineation specifying the "clerks" office. Plaintiffs may not, under the facts of this case, rely upon *Mingus* to avoid the covenants.

Plaintiffs also rely upon *DeBoer v. Oakbrook Home Assn.*, 218 Neb. 813, 359 N.W.2d 768 (1984). This reliance is misplaced. In *DeBoer*, unlike this case, no covenants applicable to the land in question were filed anywhere until after the conveyance. We do not find *DeBoer* controlling in this case. The warranty deed in *DeBoer* stated that the property was free and clear of encumbrances.

We hold that plaintiffs had actual notice of the covenants and that those covenants run with plaintiffs' property. The trial court was correct in this regard.

Plaintiffs' second assignment of error is that the Association did not have the authority to amend the covenants. Restriction No. 13 provides in the covenants that the "Seller" may amend or revoke the conditions by following a prescribed method, except restrictions Nos. 1 and 10, which apply to general common areas of the subdivision. "Seller" is defined and specifically includes the Association, which was to be formed. The parties make no contention that the Association was not properly formed. The question to be answered, therefore, is whether that grant of authority became effective with the later formation of the Association. While the grant of authority to amend could have been revoked prior to the formation of the Association and was of no effect until its formation, the provision could and did become effective upon the formation of the Association. Such a position is consistent with and analogous to the validity of other aspects of corporations before they are formed. A share subscription prior to

incorporation may be binding on the corporation when it comes into legal existence. See, e.g., Neb. Rev. Stat. § 21-2016 (Reissue 1983). Once the Association was formed and obtained title to the remaining lots and to the common areas, lake, dam, sewer system, and the like, it came within the definition of "seller" and had the authority to revoke and amend the covenants as provided therein. The trial court correctly ruled in this regard.

Plaintiffs' third assignment of error is that the trial court erred in holding that the Association had authority to amend the covenants to require mandatory membership and to assess multiple lot dues and special assessments, because that issue had been determined adversely to the Association's position in earlier litigation. The earlier litigation referred to by plaintiffs is a Cass County District Court case entitled *Beaver Lake Association v. Lakeside Properties, Ltd.*, docket 26, page 95, and docket 27, page 121 (decided Nov. 2, 1983). That case was one between those two named parties only. The record before us in this case, insofar as that earlier case is concerned, consists solely of the judgment entered in that case. That judgment specifically states, "The Court limits its finding here to the parties in these causes of action." In the *Lakeside Properties* district court case, the court found that Lakeside had a vested right in the dues structure of the bylaws and that the notice given to amend those bylaws in that case was improper. The judgment in that case set out that the court did not have any deeds or covenants before it. The bylaws, the basis of the *Lakeside* decision, are not in evidence before us. Plaintiffs' reliance on that district court case as support for their position is without any legal foundation. The parties were different; the facts were different. There can be no res judicata or stare decisis. Plaintiffs' contentions in this assignment of error are without merit. The Association, by definition in the original covenants and as an assignee of the Corporation, has the authority to amend the covenants. The trial court was correct in finding that the Association could make the amendments involved herein.

The judgment of the trial court is affirmed in all respects.

AFFIRMED.