CRAIG HEARON, APPELLANT, V. TIM MAY ET AL., APPELLEES.
DEBRA WARNING, APPELLANT, V. TIM MAY ET AL., APPELLEES.
540 N.W.2d 124

Filed December 1, 1995.   Nos. S–94–187, S–94–188.

James J. Paloucek, of Kelley, Scritsmier & Byrne, P.C., for appellants.

Stephen W. Kay, of Kay & Kay, for appellee May.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

FAHRNBRUCH, J.

Craig Hearon, a high school student wrestler, and his mother, Debra Warning, each filed a petition against Tim May, a wrestling referee, claiming that Hearon suffered spinal injuries as a direct and proximate result of (1) May's ordinary negligence and (2) May's reckless disregard for the safety of Hearon while May was instructing Hearon on a wrestling maneuver.

On May's motion, the district court for Chase County struck from each of the plaintiff's amended petitions the ordinary negligence cause of action. Also on May's motion, the district court entered summary judgment in favor of May on each amended petition and dismissed the petitions' remaining causes of action, which alleged reckless disregard for Hearon's safety. Hearon and Warning timely appealed from the trial court's holdings.

The evidential record reflects that at the time of Hearon's injuries, May was instructing Hearon on how to appropriately conduct a wrestling maneuver, the "fireman's carry."

We hold that ordinary negligence is a proper cause of action when negligent supervision or negligent instruction is involved in a sporting activity. Hearon and Warning, therefore, should not have been precluded from alleging in their amended petitions that May is liable for Hearon's injuries on the grounds of negligent supervision and negligent instruction.

We reverse the trial court's orders that struck from the petitions in these cases the causes of actions which alleged that May was negligent and the trial court's entries of summary judgment in favor of May.

## ASSIGNMENTS OF ERROR

In substance, Hearon and Warning contend that the trial court erred in (1) sustaining May's demurrers, (2) sustaining May's

motions to strike, (3) granting May's motions for summary judgment, and (4) determining that Hearon and Warning are not entitled to a jury trial in their actions against May.

## STANDARD OF REVIEW

An appellate court has an obligation to reach conclusions on questions of law independent of the trial court's ruling. *Lincoln Lumber Co. v. Fowler, ante* p. 221, 533 N.W.2d 898 (1995).

Summary judgment is to be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Callan v. Balka, ante* p. 469, 536 N.W.2d 47 (1995). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. See *SID No. 57 v. City of Elkhorn, ante* p. 486, 536 N.W.2d 56 (1995).

## FACTS

May, a Nebraska State Athletic Association certified high school wrestling referee, was a former two–time district champion high school student wrestler from Banner County who qualified for state high school wrestling meets for 4 years. May also played football for 2 years at the University of Wyoming.

The Dundy County High School athletic director hired May to referee a January 31, 1991, wrestling meet between Dundy County High School and Culbertson High School.

At the conclusion of the wrestling meet between the two high schools, May, with the approval of Dundy's team coach and the school athletic director, volunteered to instruct Dundy wrestlers on certain wrestling maneuvers. The Dundy coach called his Dundy wrestlers together after the meet and told them that May would demonstrate some moves to help the team. The instruction by May was not required, and some of the Dundy wrestlers chose to leave and not attend May's instruction.

The fireman's carry was among the maneuvers upon which May instructed the wrestlers.

In his deposition, Hearon described the fireman's carry as "shoot[ing] in on somebody like you're going to take them

down in a single–leg, you capture their arm and you more or less pull them off your shoulder with the use of their arm and your other arm onto the mat." According to Hearon, the fireman's carry is a takedown maneuver in which the opponent usually will fall on his hip or back.

May, in his deposition, described the fireman's carry as being initiated with a "head tie." The wrestler grabs an opponent's arm, ducks his own head underneath the opponent's "shoulder pit," and with one knee drops to the mat and to the middle of the opponent's legs, and with his hand under the opponent's crotch, the wrestler throws the opponent to the mat.

After May instructed the wrestlers in a group, the team coach told the wrestlers to separate into pairs and work on the maneuvers. Hearon practiced the maneuvers with May because an even number of high school wrestlers was not present. Hearon performed the fireman's carry on May more than once at near regular speed. The more that Hearon performed the maneuver on May, the more May resisted Hearon's attempted takedowns, which, according to Hearon, is normal in practicing a wrestling maneuver.

According to Hearon's deposition, as he was once again preparing to attempt the fireman's carry, May, without telling Hearon, began performing the fireman's carry on Hearon and performed it more than once. May stated in his deposition that he did inform Hearon that he would be performing the fireman's carry on Hearon. The two then alternated in performing the fireman's carry with resistance, as if they were in a meet. At all times during the drill, May's intention was not to engage in wrestling, but to instruct Hearon and demonstrate to him the proper way to perform selected wrestling maneuvers.

During the drill, May, at approximately 75 percent full speed, executed the fireman's carry on Hearon. The petitions allege that, instead of landing on his hip or his back, Hearon landed on his head, and as a result, Hearon received a fracture and displacement of his cervical spine.

Hearon and Warning filed petitions against May, Dundy County Public Schools, the coach, and the athletic director. As to May, the petitions alleged that May was negligent in wrestling with Hearon. May filed a demurrer to each petition. The trial

court sustained the demurrers on the grounds that an allegation of reckless disregard for Hearon's safety was required to state a cause of action and that an allegation of ordinary negligence was not sufficient. Ordinary negligence is doing something that a reasonably careful person would not do under similar circumstances, or failing to do something that a reasonably careful person would do under similar circumstances. *Kappenman v. Heule*, 241 Neb. 54, 486 N.W.2d 27 (1992).

Hearon and Warning did not stand on their pleadings, but, rather, filed amended petitions against May, Dundy County Public Schools, the coach, and the athletic director. Each petition stated that the claim made upon Dundy County Public Schools was filed in compliance with the Nebraska Political Subdivisions Tort Claims Act. No such claim was made against May.

The first cause of action in each amended petition alleged negligent supervision on the part of all defendants, including May. The second cause of action in each amended petition alleged negligent instruction on the part of all defendants, including May. The third cause of action in each amended petition alleged that all defendants, including May, acted with reckless disregard for Hearon's safety in their supervision of Hearon. The fourth cause of action in each amended petition alleged that all defendants, including May, acted with reckless disregard for Hearon's safety in their instruction of Hearon.

May filed motions to strike the first two causes of action in each of the amended petitions, which alleged that May was guilty of ordinary negligence, because such allegations were contrary to the previous court orders sustaining his demurrers. The trial court sustained May's motions to strike the first two causes of action as they applied to him in each of the amended petitions.

In a progression order, the trial court consolidated the cases for trial. Because the cases involved a political subdivision, the court ordered that they would be tried to the court rather than to a jury. Hearon and Warning objected to that holding. They contended they were entitled to a jury trial as to May because he was not protected by the Political Subdivisions Tort Claims Act.

In each case, May moved for summary judgment and asked that the amended petitions be dismissed. Among the exhibits offered by May in support of his summary judgment motions were Hearon's and Warning's responses to requests for admissions, in which they each admitted that May was not acting with reckless disregard for Hearon's safety. They also admitted that they had no facts or evidence establishing that May acted with reckless disregard for Hearon's safety. The trial court sustained May's motions for summary judgment.

## ANALYSIS

We initially note that the sustained demurrers, motions to strike, and motions for summary judgment from which Hearon and Warning appeal were filed by May alone. The other defendants did not take part in those motions and have been silent in these appeals.

### DEMURRERS

Hearon and Warning contend that the trial court erred in sustaining May's demurrers. However, Hearon and Warning did not stand on their original petitions, but, rather, filed amended petitions. A litigant must stand on a pleading against which a demurrer has been sustained in order to preserve the right to appeal the decision on the particular demurrer. See *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994). Therefore, we do not address Hearon's and Warning's first assignments of error.

### MOTIONS TO STRIKE

Hearon and Warning contend that the trial court erred in sustaining May's motions to strike the causes of action which alleged negligent supervision and negligent instruction on the part of May.

The trial court granted the motions to strike on the ground that a claim of ordinary negligence does not properly state a cause of action for injuries resulting from physical contact sports.

In arguing that the trial court erred in striking the negligent supervision and negligent instruction causes of action, Hearon and Warning rely upon *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979), a wrongful death action

in which a ninth grade student died as a result of being accidentally struck in the skull by a golf club during a physical education class. In a bench trial, the *Brahatcek* trial court entered judgment in favor of the plaintiff. We affirmed the trial court and held that inattention to the duty to exercise care in a situation which reasonably may be regarded as hazardous is evidence of negligence, notwithstanding the act or omission involved would not in all cases, or even ordinarily, be productive of injurious consequences. *Id.*

In *Ohnstad v. Omaha Public Sch. Dist. No. 1*, 232 Neb. 788, 442 N.W.2d 859 (1989), we also applied an ordinary negligence cause of action in a sports injury taking place during an organized high school sporting event. In *Ohnstad*, a 17–year–old high school student died from injuries sustained in a pole–vaulting accident while participating at the 1983 Metro Conference track meet. The administrator of the decedent's estate brought an action under the Political Subdivisions Tort Claims Act alleging negligent supervision and instruction. The trial court found for the defendant on the ground that the decedent's own actions were the proximate cause of the injuries. Upon review of the record, we affirmed the trial court and held that sufficient evidence supported the court's findings. *Id.*

In the cases at bar, the trial court based its holdings on *Dotzler v. Tuttle*, 234 Neb. 176, 449 N.W.2d 774 (1990). Dotzler sued Tuttle for injuries arising out of a collision between the two during a "pickup" basketball game. The trial court sustained Tuttle's demurrer as to Dotzler's cause of action for negligence and the jury returned a verdict in favor of Tuttle on the cause of action involving an allegation of recklessness. We defined the issue on appeal as whether an individual participating in a contact sport has a cause of action against another participant because of injuries sustained as a result of ordinary negligence on the part of that other participant. We held that a participant in a game involving a contact sport is liable for injuries in a tort action only if his or her conduct is such that it is either willful or constitutes a reckless disregard for the safety of another participant. We also held such a participant is not liable for ordinary negligence.

In so holding, the *Dotzler* opinion relied upon the policy

rationale that vigorous and active participation in sporting events should not be chilled by the threat of litigation, and that fear of civil liability stemming from negligent acts occurring in an athletic event could curtail the proper fervor with which the game should be played and discourage individual participation.

As a result, in the cases at bar, whether an appropriate cause of action is alleged depends upon whether May was instructing or supervising Hearon at the time of Hearon's injuries or whether May and Hearon were participants in a contact sport.

Although May was not the team coach, a Dundy high school teacher, or an official instructor, he did, after the wrestling meet, assume the role of instructor as to Hearon. May volunteered to instruct the high school wrestlers, and at the time Hearon received his injuries, May considered himself to be instructing Hearon on how to perform the fireman's carry. Hearon's high school coach and athletic director also viewed the post–wrestling–meet session as a time of instruction and practice led by a volunteer, May.

Hearon stated in his deposition that, as May increased his resistance to Hearon's attempted maneuvers, the drill simulated an actual wrestling match. Hearon also stated that increased resistance to maneuvers and continual practice of a maneuver are the routine forms of organized practice and coaching.

In the cases at bar, the record does not reflect that May and Hearon were participants in a contact sport at the time of Hearon's injury. The record reflects that Hearon was injured while May was instructing him on how to effectively participate in a contact sport. The rule in *Dotzler* does not apply in Hearon's case because the *Dotzler* facts do not concern an instructor injuring a student during instruction.

We hold that instructors, teachers, and coaches are liable for injuries sustained by an instructee if such injuries are received by the instructee while the instructor, teacher, or coach engages in physical contact with the instructee and the instructee's injuries are the proximate result of the ordinary negligence of the instructor, teacher, or coach.

As a matter of law, Hearon and Warning may plead causes of action against May that allege negligent supervision and negligent instruction by May due to his actions as an alleged

volunteer wrestling instructor. Negligence must be measured against the particular set of facts and circumstances which are present in each case. *Center State Bank v. Dana, Larson, Roubal & Assoc.*, 226 Neb. 408, 411 N.W.2d 635 (1987). According to our holding in *Brahatcek v. Millard School District*, 202 Neb. 86, 273 N.W.2d 680 (1979), where lack of supervision by an instructor is relied upon to impose liability, the negligence cause of action is defined as doing something which an ordinary, prudent person would not have done under similar circumstances or failing to do something which an ordinary, prudent person would have done under similar circumstances. *Id.*

## MOTIONS FOR SUMMARY JUDGMENT

Hearon and Warning also contend that the trial court erred in granting May's motions for summary judgment. As a result of the trial court's striking the causes of action alleging ordinary negligence by May, the motions for summary judgment were in reference only to the two causes of action alleging reckless disregard by May for the safety of Hearon.

The record reflects that Hearon and Warning both admitted that May did not act with reckless disregard for Hearon's safety and that the record is absent of any evidence or inference establishing recklessness on the part of May. As a result, the trial court did not err in finding that there was no genuine issue of material fact as to whether May was liable for acting with reckless disregard for Hearon's safety.

## JURY TRIAL

Nothing is alleged in any of the pleadings of Hearon, Warning, or May to indicate that at the time Hearon received his injuries, May was covered under the Political Subdivisions Tort Claims Act. At oral argument in this court, May conceded to Hearon's and Warning's assignments that the trial court erred in determining that Hearon and Warning were not entitled to a jury trial in their actions against May. Therefore, we do not need to further discuss this undisputed assignment of error.

## CONCLUSION

Hearon, a high school student wrestler, was injured during an

instructional practice session following a wrestling meet. The proper standard of care for negligent supervision or negligent instruction of an organized sports activity is whether the defendant acted as a reasonably careful person in a similar circumstance. Therefore, we reverse the district court's order sustaining May's motions to strike all causes of action alleging ordinary negligence.

We affirm the trial court's entries of summary judgment in May's favor regarding Hearon's and Warning's causes of action, alleging that May was liable to them as a result of May's alleged reckless disregard for Hearon's safety.

We remand Hearon's and Warning's causes to the district court for further proceedings regarding their causes of action against May that allege negligent supervision and negligent instruction on his part.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.

WHITE, C.J., concurs.